IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAMMER LGC, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Fed. Cl. No. 08-91C |
| | ) | (Judge Christine Miller) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A, ¶¶ 3-5, of the Rules of the United States Court of Federal Claims, plaintiff, Hammer LGC, Inc. (Hammer), and defendant, the United States, submit this joint preliminary status report.

a. Does the court have jurisdiction over the action?

Plaintiff believes that the Court has jurisdiction over the action. At the present time, defendant does not have any reason to question the Court's jurisdiction over this action, other than the issues identified in the parties' joint stipulation of partial dismissal, specifically "Release of Retention (complaint ¶ 228E) and "Continental Plumbing's Pass Thru REA" (complaint ¶ 228F), filed on June 4, 2008.

b. Should the case be consolidated with any other case and the reasons therefor?

At the present time, the parties agree that this case should not be consolidated with any other case.

c. Should trial of liability and damages be bifurcated and the reasons therefor?

The parties agree that the issues of liability and quantum should not be bifurcated.

d. Should further proceedings in this case be deferred pending consideration of <u>another case before this court or any other tribunal and the reasons therefor?</u>

The parties agree that this case should not be deferred.

e. In cases other than tax refund actions, will a remand or suspension be sought and <u>the reasons therefor and the proposed duration?</u>

Neither party seeks remand nor suspension.

f. Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and schedule <u>proposed to effect joinder?</u>

Neither party intends to join additional parties at this time.

g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 <u>and, if so, a schedule for the intended filing?</u>

At the present time, neither party intends to file any dispositive motions. However, after discovery is completed, both parties reserve the right to file a dispositive motion if it believes that such a motion is appropriate.

h. <u>What are the relevant factual and legal issues</u>?

<u>Plaintiff states</u>:

The plaintiff, Hammer LGC, Inc., asserts that the relevant factual and legal issues presented in this action include (1) whether the Government's interference with Hammer's performance of the contract at issue was a breach of the covenant of good faith and cooperation inherent in all contracts, (2) whether the Government's interference with Hammer's performance of the contract amounts to bad faith, and (3) whether the Contracting Officer issued an appropriate decision upon the Hammer's Request for Equitable Adjustment and Certified Claim, given the extent of the Government's interference with Hammer's performance of the contract.

Defendant states:

This case involves contract number N62467-00-C-0288, Design/Build Aircraft Support Facilities, Naval Air Station, Meridian, Mississippi. The contract provided for the design and construction of four new buildings: Building 192, an earth covered solid concrete ammunition magazine site adapted from a standard Navy design; Building 193, an inert bomb built-up facility; Building 194, a calibration laboratory; and Building 195, a pre-engineered metal supply warehouse. The contract work also included installation of fencing and renovations to three buildings: Building 002, renovation of several rooms; Building 150, conversion of the high bay space into two floors of training classrooms and offices; and Building 223, installation of an exhaust fan for carbon dioxide detection and ventilation. The contract provided for the completion of “Phase A” of the project (all work except for Building 195, which was “Phase B”) within 675 days after contract award. The contract provided for completion of Phase B within 420 days after contract award.

The Navy awarded the contract to Hammer on June 1, 2001 in the amount of $3,818,070. Seven modifications ultimately increased the contract price to $4,018,756.28. These modifications also established the time for completion of Phase A as May 23, 2003, and Phase B as September 1, 2002.

During the course of performance, a number of issues arose between Hammer and the Navy. These issues began during the design phase of the project when Hammer failed to complete the design in a timely manner. This led to the Navy issuing an interim unsatisfactory performance evaluation. Hammer responded to the poor performance comments in this evaluation by laying full responsibility for the problems upon the designer it had selected.

During construction of the project, further issues arose between the parties. In 2003, Hammer eventually completed the Phase A work 67 days late and the Phase B work 249 days late. The Navy assessed liquidated damages of $87,100 for Phase A and $174,300 for Phase B.

In January 2006, Hammer submitted a request for equitable adjustment (REA) to the Navy. After the Navy denied the REA, Hammer certified the REA as a claim on June 13, 2006. On December 20, 2006, Hammer revised the claim by deleting a claim submitted upon behalf of its plumbing subcontractor and by reducing its retention claim to $101.

As revised the claim sought a total of $731,849. In addition to the remission of liquidated damages, the claim sought $181,428 in "unresolved direct costs." The items in this portion of the claim, in general, correspond to counts 1-14 of the complaint. The claim also sought $195,935 for "extended general conditions" and $68,377 for "added supervisory personnel." These items correspond with complaint paragraphs 228A and 228B. The contracting officer denied the claim on October 22, 2007.

Although the revised claim accused the Navy of bad faith and delaying Hammer, it did not contain the request for an additional $950,000 in damages for "defendant's bad faith acts of delaying and hindering the plaintiff . . ." as alleged in complaint paragraph 227. Accordingly, the amount sought in the complaint is more than double the amount sought in the revised claim.

The complaint relies upon a breach of the duty of good faith and cooperation theory for all of the unresolved direct cost claims in counts one to 14 of the complaint. However, except for the allegations contained in the "Background" section of the complaint discussed below, our review of the complaint, particularly counts one through 14 and the "additional damages" section on page 26, indicates that this case actually involves typical construction project disputes

concerning extra work, repair of defective work, and delay. In her final decision, the contracting officer explained the facts and contract provisions upon which the Navy relied in support of its denial of each aspect of the claim. Hammer's complaint tends to mirror the revised claim and does not provide any further details that demonstrate that the contracting officer's decision was incorrect. For example, count two of the complaint involves Hammer's contention that the Navy directed it to paint all conduit in the mechanical room even though no provision of the contract required such painting. In her final decision, the contracting officer, among other things, quoted a section of the contract that required painting of all conduit inside the building. In its complaint, Hammer does not explain why the provision cited by the contracting officer is inapplicable, nor does it cite any countervailing provision of the contract. Thus, in requiring Hammer to paint the conduit, the Navy appears not only to have acted in good faith, but also to have correctly enforced the terms of the contract.

With respect to Hammer's allegations in the background section of the complaint that a Navy official stated that the Navy would attempt to bankrupt Hammer and that the Navy punished Hammer after Hammer refused to hire a former employee of the Resident Office in Charge of Construction (ROICC), Hammer made these allegations prior to submission of its certified claim and the Navy appears to have taken them seriously. The Navy appointed David DeMoske, an official from outside the Meridian Naval Air Station, to conduct an investigation of Hammer's allegations. In March 2003, Mr. DeMoske issued a report based upon extensive witness interviews and review of the contract file. With respect to the alleged comments by Lieutenant (Lt.) Bowles that the Navy would bankrupt Hammer, Mr. DeMoske stated that Lt. Bowles denied in his interview having made the comments, that Lt. Bowles did not appear to

have a temper and did not make unreasonable comments about Hammer. He further noted that there were no witnesses to the conversation between Lt. Bowles and the Hammer employee when Lt. Bowles allegedly made these comments. Mr. DeMoske stated that interviews with other employees of the Navy indicated that Lt. Bowles was a professional person and that such statements would not be consistent with his character. Further, Mr. DeMoske stated that he could find no documents in the file that were anything but professional, with no examples of confrontational or antagonistic language in any correspondence. Accordingly, Mr. DeMoske found no support for Hammer's allegation.

With respect to Hammer's allegation concerning the actions of the Navy after Hammer refused to hire a former ROICC official, Ken Black, Mr. DeMoske found that Mr. Black was a former Naval officer, but had never worked in the ROICC office. In addition, his only work experience with the ROICC office had been his work as a quality control representative on other projects after his retirement from the Navy. His good work on those other projects had caused the Navy to provide his name, along with others, when contractors request the names of potential quality control representatives.

The Defense Contract Audit Agency (DCAA) conducted an audit of Hammer's claim. In its May 18, 2007 report, DCAA found that: Hammer's accounting records do not adequately support the amounts claimed; claimed costs are duplicative in some areas; that job cost records did not isolate incremental cost increases; and that Hammer did not have original bid documents for comparison to claimed cost increases. DCAA questioned $445,593 of the $731,849 claimed by Hammer.

I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

The parties have not yet engaged in settlement discussions. The parties believe that, at this time, they cannot predict the likelihood of settlement or whether alternative dispute resolution will be appropriate.

j. Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefore?

Unless a settlement is reached, the parties anticipate proceeding to trial. Neither party requests an expedited trial.

k. Are there special issues regarding electronic case management needs?

At the present time, the parties are unaware of any special issue regarding electronic case management needs.

l. Is there other information of which the court should be aware at this time?

The parties are unaware of any other information that should be brought to the Court's attention at this time.

PROPOSED DISCOVERY PLAN

| Date | Event |
|---|---|
| 4/30/09 | Conclusion of all non-expert discovery |
| 5/29/09 | Disclosure of Hammer's expert report(s) |
| 6/30/09 | Disclosure of defendant's expert report(s) |
| 8/31/09 | Conclusion of expert depositions |

Respectfully submitted,

s/Howell Roger Riggs
Howell Roger Riggs
Attorney for the Plaintiff
Dick Riggs Miller, LLP
200 Clinton Avenue West, Suite 1050
Huntsville, Alabama 35801
Tel: (256) 564-7317
Fax: (256) 564-7319
hriggs@drmslaw.net

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
U. S. Department of Justice
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, DC 20530
Tel: (202) 353-1618
Attorneys for Defendant